JOHNSON *v.* RUSSELL, MAYOR.

4-5535                                          127 S. W. 2d 260

Opinion delivered April 17, 1939.

*H. G. Leathers*, for appellant.

*Claude A. Fuller*, for appellee.

HOLT, J. On the 5th day of January, 1939, appellant, O. F. Johnson, an aggrieved property owner, brought suit in the Carroll chancery court, Western District, to enjoin the City Commissioners of the city of Eureka Springs, Arkansas, and their contractor, from proceeding with the construction of a sewage disposal plant.

On January 24, 1939, the court sustained a demurrer to appellant's complaint and in its decree dismissed the complaint for want of equity. Appellant refused to plead further, elected to stand on his complaint and prayed an appeal to this court, which was granted. Subsequently on February 18, 1939, appellant's attorney made the following entry on the docket of the trial court: "Plaintiff's prayer for appeal withdrawn and case dismissed without prejudice, in vacation, by H. G. Leathers, attorney for plaintiff, this 18th day of February, 1939."

On the same date, subsequent to the above dismissal, appellant Johnson, the same plaintiff who filed the complaint referred to above, filed another suit in the same court between the same parties setting forth allegations substantially the same as in his first complaint and

praying the same relief. The material portions of these allegations are: "That A. J. Russell is Mayor of the city of Eureka Springs, Arkansas, and Ray Freeman is the city clerk of said city; that A. J. Russell, Ray Freeman and Joe Morris are commissioners of the city of Eureka Springs, Arkansas; that they and each of them were acting as such at all times hereinafter mentioned and set forth, and that on, or about, the 29th day of December, 1938, they and each of them acting as such, entered into a purported contract with one H. Perkins of Fayetteville, Arkansas, for the construction of a sewage disposal plant for the use and benefit of the city of Eureka Springs, Arkansas.

"Plaintiff states that there was, in fact, no contract for the installation of said sewage disposal plant for the reason that the defendants were without the ability to contract, not having been vested with that authority by proper ordinance, and that any purported contract entered into by them was by their own volition and that they are now, and have been for some time proceeding with the work to the detriment and to the expense of the taxpayers of Eureka Springs, Arkansas, without any legal authorization whatever, and without any authority of law, they have usurped the authority to contract for and build a sewage disposal plant at a cost far in excess of the needs of Eureka Springs, Arkansas, all at the cost of, to the detriment of, the taxpayers of Eureka Springs, Arkansas," and if allowed to proceed, "will work an irreparable loss on the taxpayers for which they have no adequate remedy at law."

"Petitioner will show the court that a sewage disposal plant adequate to take care of the needs of the city of Eureka Springs, Arkansas, could be built for approximately $8,000.00; that said disposal plant would be of the proper type, the proper capacity, and in every way a sufficient disposal to meet adequately all the needs of Eureka Springs at this time, or an increase in population up to ten thousand."

To this latter complaint on appellees' motion to make more definite and certain, appellant added the

52

following amendment: "That in compliance with the defendants' motion to make more specific and certain the complaint of the plaintiff, plaintiff files herewith and marks exhibits ......................... ........................ ........................ the minutes of a special meeting of the City Commissioners held on December 23, 1938, at which time bids were received from contractors and the contract awarded to defendant H. L. Perkins.

"The minutes of a special meeting of the City Commissioners held on December 27, 1938, at which time an ordinance was introduced establishing just and equitable rates for sewer charges, etc.

"Ordinances number 696 and 697 passed by City Commissioners.

"Minutes of meeting of the Sewer Committee."

The record reflects that three other citizens of Eureka Springs, Perry C. Mark, Chas. E. Border and R. R. Thompson, were allowed to intervene and be made parties plaintiffs along with appellant, Johnson.

To this latter complaint as amended, appellees filed a demurrer alleging, among other things, that the complaint as amended did not state facts sufficient to constitute a cause of action.

The court entered a decree sustaining the demurrer, and appellants electing to stand on their complaint, the court entered a final order dismissing appellants' complaint for want of equity, and from this decree comes this appeal.

This record reflects that the city of Eureka Springs, Arkansas, is operated under a commission form of government under Act 305 of 1915, p. 1249, as amended by Act 439, p. 1984, of the General Assembly of 1917. A J. Russell, Ray Freeman and Joe A. Morris are the acting commissioners. A. J. Russell was designated as Mayor. Under the aforesaid authority these three Commissioners constitute all committees and are the Commissioners of all improvement districts and other agencies of the city government.

In the fall of 1938, the city of Eureka Springs, Arkansas, made application to the Public Works Adminis-

tration for a loan and grant for the purpose of remodeling and building a sewage disposal plant on property owned by the city. The Public Works Administration approved the city's application for a grant of $12,273 and agreed to accept bonds in the sum of $15,000, said bonds to be retired from a fund collected monthly from the property owners and users of the sewer system. In pursuance to said agreement, the appellees selected an engineer, who drew plans and specifications, which were approved by the Federal Government, selected a bank as depository, and an attorney to represent the city. Appellees advertised for bids for the construction of the sewage disposal plant and received the following bids: Ottinger Brothers, Minton, Oklahoma, . . $26,590.10; Don P. Pray, Monette, Missouri, . . $22,105.00; and H. L. Perkins, Fayetteville, Arkansas, . . $21,534.55. The contract was let to the lowest responsible bidder, H. L. Perkins of Fayetteville, Arkansas.

The record further discloses that appellees proceeded under Act 132, p. 405, of the Acts of Arkansas for 1933, authorizing cities to construct, own, equip, operate, maintain and improve works for the collection and treatment, purification and disposal of sewage, which is generally known as an act to provide means whereby cities could obtain loans and grants from the Public Works Administration and retire the bonds purchased by the Federal Government, solely from the revenue realized from such improvements.

Section 4 of said Act 132 of 1933 provides as follows: "Before any city or town shall construct or acquire any works under this Act, the Municipal Council shall enact an ordinance or ordinances which shall (a) set forth a brief and general description of the works proposed to be constructed or purchased, and, if the same are to be constructed, a reference to the preliminary report or plans and specifications which shall theretofore have been prepared and filed with the Clerk or Recorder by an engineer chosen by such Council; (b) set forth the cost thereof estimated by the engineer chosen as aforesaid, on the purchase price if the works

are to be purchased; (c) order the construction or acquisition of such works, in which connection the ordinance will recite that the terms of the construction or acquisition, so far as they are not set out in such ordinance, will thereafter be fixed by the Council or Sewer Committee; (d) state the names of the members of the Sewer Committee to have charge of such works and the construction or acquisition thereof; (e) direct that revenue bonds of the city or town shall be issued pursuant to this Act in such an amount as may be found necessary to pay the cost of the works; and (f) contain such other provisions as may be necessary in the premises.''

At the out-set we may say that we would affirm this case for the failure of appellant to supply this court with the proper abstract of the record as required under Rule 9 of this court, except for the fact that appellees have fairly suplied these omissions.

It is the contention of appellants that appellees failed to comply with the terms of Act 132 of 1933, supra, or with the law governing, and were acting wholly without power, and that the trial court committed error in sustaining appellees' demurrer to the second complaint as amended and filed herein. We cannot agree with appellants in this contention.

That appellees under Act 132, and the commission form of government act, supra, had the power to do exactly what they have undertaken to do in this case, we think, cannot be questioned. Certainly appellants in their complaint have failed to point out any lack of such power on the part of appellees. Appellants' complaint, as amended with its exhibits thereto, shows a strict compliance with these acts, and, therefore, we think the trial court correctly sustained appellees' demurrer in this case.

This court in *Jernigan* v. *Harris,* 187 Ark. 705, 62 S. W. 2d 5, said: ''The power of cities and towns to install sewage systems and waterworks is universally recognized. The health, as well as the comfort and convenience of persons living together in close relation and in large numbers require the existence of such powers,

and a sewage system would be valueless unless the power inhered to require all property owners to make physical connections with the sewers. . . . A sewer is a permanent improvement, and, if properly maintained, lasts indefinitely. It adds to the value of the fee as well as to the value of the mere right of occupancy, and the property thus served pays the installments of cost as they mature." This court further said, in the Jernigan Case, speaking of Act 131 and Act 132 of 1933, one relating to waterworks and one to sewer systems: "These acts are both complete and capable of being executed in accordance with the legislative intent expressly declared . . . and the acts must therefore be upheld, notwithstanding this exemption and its consequent unconstitutionality as applied to persons or agencies whose property would otherwise be subject to taxation." See, also, *Snodgrass* v. *Pocahontas*, 189 Ark. 819, 75 S. W. 2d 223, and *Ringgold* v. *Bailey*, 193 Ark. 1, 97 S. W. 2d 80.

Appellants also contend that the cost of the proposed plant is excessive and unnecessarily burdensome. As we have said, appellees had the power to build a plant. They let the contract under competitive bidding, to the lowest bidder. Appellants allege no fraud of any kind. The powers of appellees, in the premises, are largely discretionary, and unless they abuse these powers, injunctive relief will not be granted. In 32 C. J. at page 242, the text-writer says: "Where public officials are intrusted with discretionary power in certain matters, their exercise of such discretion will not be controlled by injunction in the absence of any showing that their action is fraudulent or in bad faith, or that it amounts to an abuse of the discretion so vested in them; . . ."

We are of the opinion, therefore, that appellees have acted within their powers, that the trial court committed no error in sustaining appellees' demurrer, and on the whole case, that its decree should be affirmed, and it is so ordered.