Taylor *v.* Black Motor Lines, Inc.

4-6676

160 S. W. 2d 859

Opinion delivered April 6, 1942.

*Harry C. Robinson,* for appellant.

*B. F. Batts, Gaughan, McClellan & Gaughan* and *P. A. Lasley,* for appellee.

McHaney, J. Appellant seeks a license to operate a motor freight transportation line between El Dorado and Texarkana, Arkansas, over U. S. highway 82 and to serve all intermediate points. March 19, 1941, he filed his application for such license with the Arkansas Corporation Commission, in which he names appellees, Black Motor Lines, hereinafter called Black, and Southwestern

Transportation Company, hereinafter called Southwestern, as motor carriers operating over a part of the route, to-wit: Black, El Dorado to Magnolia, turn south on U. S. highway 79 to Shreveport, Louisiana; Southwestern, Texarkana to Magnolia, turn north on 79 to Camden and Little Rock. Appellees were duly notified, appeared and protested the granting of the license sought by appellant. The license was granted by the commission. Appellees appealed to the circuit court of Pulaski county, where, on a hearing by the court on the record made before the commission, the latter's order granting said license was canceled, set aside, annulled and held for naught. This appeal followed.

As will appear from the above statement, appellant seeks authority to operate a truck line between El Dorado and Texarkana through Magnolia, to serve all intermediate points, on highway 82, right through the heart of the oil fields of Arkansas. The territory he would serve is already being served by appellees. He testified he had about $2,500 in assets consisting in part of Packard 8 coupe of the value of $600, a one-half ton 1940 Ford pickup truck, worth $500, and real estate of $1,200 or $1,500 in value. He is now employed by the Southeast Arkansas Freight Lines, Inc., in the capacity of city agent at El Dorado, but that said company would have no financial interest in his permit, if granted. Act 367 of 1941 is the latest motor carrier act and § 9 (a) thereof provides the conditions under which a certificate shall be issued or denied. Among others it is provided that the applicant must be found to be "fit, willing and able properly to perform the service proposed," and another is that the proposed service "is or will be required by the present or future public convenience or necessity." If these things are found the certificate shall be granted; otherwise, denied; "and the burden of proof shall be upon the applicant." Section 9 (c) reads as follows: "In granting application for certificate, the Commission shall take into consideration the reliability and financial condition of the applicant and his sense of responsibility toward the public; the transportation service being maintained by any railroad, street railway or motor carrier;

the likelihood of the proposed service being permanent and continuous throughout twelve months of the year, and the effect which such proposed transportation service may have upon other forms of transportation service; and any other matters tending to show the necessity or want of necessity for granting said application.''

Appeals to this court in cases of this kind, originating before the Corporation Commission, are tried here *de novo*. *Mo. Pac. R. R. Co.* v. *Williams*, 201 Ark. 895, 148 S. W. 2d 644. It was there held, to quote headnote No. 7, that ''A certificate of convenience may not be granted where there is existing service in operation over the route applied for, unless the service is inadequate or additional service would benefit the public and the existing carrier has been given an opportunity to furnish such additional service and has failed to do so.''

About the time, or perhaps a little after, appellant applied for a certificate, appellees rearranged their schedules of service so as to make deliveries of freight within an hour or so of the same time appellant would make them. So, the service appellant proposes to render would be an unnecessary duplication of the service already being rendered. Each of the appellees operates interstate and they interline at Magnolia. Appellant would operate only between El Dorado and Texarkana, through Magnolia. All the freight he could get out of Texas or Louisiana would be interlined at Texarkana. He could hope to get nothing from Southwestern at Texarkana as it interlines with Black at Magnolia. He could hope to get nothing out of Black at Magnolia for he goes to El Dorado. It appears to us, as it no doubt did to the trial court, that appellant, either for himself or as agent for the Southeast Arkansas Truck Lines, Inc., is attempting to ''short haul'' appellees and thereby skim the cream of the business in the oil fields of Arkansas, when there is no showing of a public convenience or necessity within the meaning of said act, even if it be conceded that appellant is ''fit, willing and able properly to perform the service proposed,'' which is doubtful.

4

The fact that appellees have improved their service since the filing of appellant's application cannot change the situation, because appellees should have been given the opportunity to so improve their service before granting appellant's application. *Mo. Pac. R. R. Co.* v. *Williams, supra.* It is also said this improved service may be only temporary and not permanent, but both appellees say it is a permanent change.

Twenty-two witnesses testified for appellant, including himself and McNulty of the Southeast, but when informed of the improved service now rendered by appellees, a majority of them said the service now rendered was satisfactory. Twenty-nine witnesses, including Mr. Black and Mr. Smith of the Southwestern, testified for appellees, and all testified the service now rendered is adequate, ample and satisfactory. The witnesses on both sides are business men, shippers, both consignors and consignees of freight that moved over highway 82, to and from El Dorado and Texarkana, and it appears to us, both from the testimony and from the circumstances and physical conditions surrounding the situation, that the public convenience or necessity does not now nor in the immediate future require the additional service proposed by appellant.

The judgment is accordingly affirmed.